Filed 2/25/25  P. v. Reddick CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101259 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F07409) |
| v. | |
| ANTONIO WAYNE REDDICK, | |
| Defendant and Appellant. | |

Defendant Antonio Wayne Reddick killed two of his passengers while driving under the influence; he received a sentence of 16 years plus 28 years to life.  He appeals for a third time after we twice remanded the matter to the trial court to consider certain sentencing issues in light of newly enacted statutory provisions.

Defendant's appointed counsel asked this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  Defendant filed two supplemental briefs raising multiple arguments regarding the trial court's decisions to: (1) not strike any of his strikes, (2) impose the middle term on

1

the principal determinate count, (3) impose the minimum restitution fine and corresponding parole revocation fine, and (4) impose consecutive terms.  We will affirm.

## I.  BACKGROUND

*A.      Trial Proceedings, First Appeal, First Resentencing, and Second Appeal*

In 2013, defendant sideswiped a van, drove off at high speed, ran multiple red lights, and crashed into another car, killing defendant's two passengers, and seriously injuring the driver of the other car.  (*People v. Reddick* (Mar. 6, 2020, C086057) [nonpub. opn.] (*Reddick I*).)

A jury found defendant guilty of two counts of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)),[1] one count of driving under the influence causing injury (former Veh. Code, § 23153, subd. (a)), one misdemeanor count of hit and run with damage to property (Veh. Code, § 20002, subd. (a)), and one misdemeanor count of driving without a valid driver's license (Veh. Code, § 12500, subd. (a)).  The jury found true that defendant had a prior serious felony (former § 667, subd. (a)) and two prior strikes (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2)).  As to the driving under the influence count, the jury also found true that defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)).  (*Reddick I*, *supra*, C086057.)

The two prior strikes were based on a September 12, 2008 conviction for second degree robbery (§ 211), and a September 12, 2008 conviction for attempted robbery (§§ 211/664).  According to the probation report, the robbery and attempted robbery occurred on the same day.  During the robbery, defendant and three other men entered and robbed the victim's business, and one of the subjects was armed with a gun.  A clerk on duty was punched and knocked unconscious before the subjects took the money and fled in a car.  During the attempted robbery, defendant and another man attempted to

---

[1]  Undesignated statutory references are to the Penal Code.

steal a woman's purse as she was putting her preschool-age child in her car. One of the two men struck her several times in the face and head, knocking her to the ground.

The trial court sentenced defendant to prison for an aggregate determinate term of 24 years, followed by an indeterminate sentence of 25 years to life. On direct appeal, this court conditionally reversed the judgment and remanded the matter for the trial court to conduct a mental health eligibility hearing pursuant to section 1001.36, exercise its discretion whether to strike the prior serious felony enhancement, and to resentence on the great bodily injury enhancement. (*Reddick I, supra*, C086057.)

On remand, the trial court found defendant ineligible for mental health diversion. The trial court struck the punishment for the prior serious felony enhancement and sentenced defendant to prison for a determinate term of 16 years plus an indeterminate term of 28 years to life, including the middle term on the principal determinate count. (*People v. Reddick* (Dec. 9, 2022, C094388) [nonpub. opn.] (*Reddick II*).)

On appeal, this court remanded the matter for the trial court to consider whether the lower term was appropriate under newly-amended section 1170, subdivision (b)(6) given defendant's alleged psychological trauma. The trial court was further directed to recalculate defendant's custody credits. (*Reddick II, supra*, C094388.)

B.      *Second Resentencing*

In December 2023, defendant asked the trial court to impose the lower term on the principal count because his childhood trauma contributed to the current offenses. According to defendant, his father was in prison for much of his childhood, and he committed suicide when defendant was 15 years old. Defendant's mother also physically abused him, and he had been the subject of juvenile dependency proceedings and placed in a group home. Defendant felt abandoned by his mother. An investigator from the public defender's office interviewed defendant's stepsister, who is five years younger than defendant. She explained defendant's behavior "started to change" when he was 11 or 12 years old, with defendant sometimes acting aggressively toward her. Defendant

also ran away from home a few times. Their mother "didn't know how to handle it," and hit defendant a few times with a belt.

Defendant also argued he had a long history of mental illness, including diagnoses for bipolar disorder and schizophrenia. He submitted a report from Dr. Melissa Piasecki, a forensic psychiatrist, who opined the stress of being abandoned as a child led to defendant's substance abuse. And being in the group home led him to associate with "higher-risk peers," who were "negative role models." As a result, defendant "developed maladaptive coping strategies and lost opportunities to engage in prosocial activities." As to the current offenses, defendant said he was experiencing irrational fears about a Crown Victoria following him when he sideswiped the other car, and he was attempting to escape this "perceived threat." Based on defendant's statements, as well as statements he made to two prior evaluators, Dr. Piasecki opined the current offense was connected to defendant's mental disorder, which was exacerbated by his drug and alcohol use, as well as lack of sleep. Dr. Piasecki believed defendant was experiencing a psychosis at the time of the crimes, "with false beliefs of being followed by a threat and a need to escape from potential harm."

Defendant also asked the trial court to strike the prior strikes pursuant to *Romero*[2] and section 1385. Defendant argued the current offenses were related to mental illness and prior childhood trauma. (§ 1385, subd. (c)(2)(D), (E); but see e.g. *People v. Serrano* (2024) 100 Cal.App.5th 1324, 1338 [the Three Strikes law is an alternative sentencing scheme not impacted by § 1385, subd. (c)].) In addition, defendant was only 24 years old at the time of the strike offenses and therefore lacked proper judgment. Further, the two prior strikes occurred on the same day, "during an aberrant period of behavior." Defendant's role in the strike offenses was minimal and he did not use any violence

---

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

4

(although defendant offered no evidence to this effect). Defendant also had expressed remorse for the current offenses and participated in rehabilitative self-help programs including a mental health program and a 2022 substance abuse program.

Defendant's brief did not address fines or fees.

The prosecution urged the trial court to impose the same sentence as before, including the middle term on the principal determinate count. The brief attached two 2016 psychologist evaluations, which were prepared to determine whether defendant was suitable for a not-guilty-by-reason-of-insanity defense. In January 2016, Dr. Paul Mattiuzzi opined he "c[ould not] conclude that this offense involved a delusional paranoia or that mental disorder was a primary factor." Defendant had done ordinary tasks that day, including laundry, indicating any fear of the Crown Victoria had not disrupted his actions that evening. There was no reason to disbelieve that defendant was merely driving recklessly while intoxicated when he sideswiped a car and fled because he was afraid of getting arrested. Under the circumstances, Dr. Mattiuzzi found defendant did not suffer from a mental disorder that impaired his capacity based on the legal standard for insanity.

Dr. John Shields also evaluated defendant, and, in July 2016, opined defendant did not qualify for an insanity finding. Defendant had a "notable mental health history," but there were "few if any reports of objectively observed symptoms of an acute mental disorder." Instead, defendant self-reported symptoms, and it appeared he was "exaggerating or perhaps fabricating symptoms of mental illness." Although defendant had been previously diagnosed with bipolar disorder, it appeared defendant was "in adequate remission," unless he became intoxicated. Still, defendant "ha[d] a history" of "aberrant, assaultive," and "out of control unmodulated behavior" when he is intoxicated. Dr. Shields was thus unable to determine that a "genuine mental disorder" existed at the time of the current offenses. Although he was voluntarily intoxicated at the time of the

5

offense, in Dr. Shields' opinion, "the offense conduct was <u>not</u> aggravated by nor caused by a genuine mental illness at the time of the offense."

The prosecution questioned the reliability of Dr. Piasecki's report, noting that, according to the police report, defendant sideswiped a Nissan, not a Crown Victoria. Given that Dr. Piasecki had given "great weight" to defendant's description of the crash, the prosecution argued defendant had failed to show there was a psychological or physical trauma that was a contributing factor to the commission of the instant offense. But even if defendant had been able to make such a showing, the low term was still inappropriate because it was contrary to the interests of justice. The aggravating circumstances outweighed the mitigating circumstances, including defendant's extensive criminal history and prior prison terms.

The prosecution's brief included a copy of a police report that contained statements from witnesses to the instant offenses, including the driver of the first car that defendant sideswiped. In addition, a supplemental police report contained defendant's statement at the hospital after the collisions, including that he had done laundry the day of the incident and had been going to get food at the time of the current offenses. There were also copies of the 2017 probation report and defendant's certified rap sheet. According to the rap sheet, defendant had the following criminal history: a juvenile violation for carjacking (§ 215, subd. (a)); a 2004 conviction for misdemeanor criminal threats (§ 422); a 2005 conviction for felony vehicle theft (Veh. Code, § 10851); a 2006 conviction for misdemeanor battery of a spouse or cohabitant (§ 243, subd. (e)(1)); 2008 convictions for second degree robbery (§ 211) and attempted second degree robbery (§§ 211/664); and a 2011 conviction for felony vandalism (§ 594, subd. (b)(1)). Defendant had been on parole or probation at the time of his 2006, 2008, and 2011 convictions, as well as the instant offenses.

The prosecution further argued it was inappropriate to strike the prior strikes. Defendant did not fall outside the spirit of the Three Strikes law because defendant had

6

an extensive criminal history "replete with crimes of violence and terror," including carjacking, spousal abuse, robbery, and the current crimes, which caused the deaths of two people and seriously injured another. Defendant also had a history of violating parole and probation, and he had numerous rule violations while incarcerated. Moreover, the current crimes could have been avoided had defendant simply stopped after sideswiping the car. Instead, he fled at a high speed, ultimately leading to the collision that killed two people and injured a third. Defendant had also demonstrated he was a danger to society, and he had failed to make efforts to rehabilitate himself.

During a hearing in April 2024, Dr. Piasecki testified her analysis was different than Dr. Mattiuzzi and Dr. Shields because they had performed "1026 reports," which considered whether defendant was sane at the time of the offenses. Her evaluation, by contrast, considered the broader questions of whether defendant's mental illness contributed to the current offenses, and the impact of childhood trauma on mental health. She did not believe defendant was malingering because there had been documented observations of mental illness in some of the records, and he had accepted "significant amounts" of antipsychotic and mood stabilizing medication. In addition, defendant had said he felt a feeling of foreboding for several days before the current offenses. Still, defendant was also using methamphetamine at the time, and methamphetamine induces paranoia and causes racing thoughts. Regardless, Dr. Piasecki thought defendant's mental health contributed to the current offenses, especially his paranoia. Specifically, defendant was suffering from bipolar disorder and post traumatic stress disorder, which were common for those who had experienced childhood trauma. In her view, defendant's childhood trauma also indirectly contributed to the current offenses because it led to his substance abuse and mental health disorders. Dr. Piasecki had not reviewed the police report in preparing her evaluation, and she was unsure if any different information contained in the police report might affect her analysis.

7

During the May 2024 resentencing hearing, the trial court indicated it had read and considered both parties' briefs and exhibits. Turning first to whether to impose the lower or middle term on the principal determinate count, the court stated it did not believe an underlying mental health disorder or childhood trauma caused defendant's offenses. The court noted it had previously made a similar finding in February 2021, when it found defendant ineligible for mental health diversion. The court recognized that Dr. Mattiuzzi and Dr. Shields had evaluated defendant in a different context than Dr. Piasecki. Still, the court found the reports from Dr. Mattiuzzi and Dr. Shields to be more reliable because they had been performed closer in time to the offenses, and both of these doctors had read the police reports and additional discovery record. In addition, Dr. Piasecki had relied more on defendant's current descriptions of his symptoms at the time of the crimes, which the court did not find as reliable, especially since defendant failed to tell police at the hospital that he was afraid he was being pursued by someone who wanted to harm him. Instead, defendant had said they were on their way to get food when the collision happened. Although defendant had similarly told Drs. Mattiuzzi and Shields that he was afraid he was being followed by the Crown Victoria during the current offenses, the trial court did not find this statement to be reliable because it had been made multiple years after the offenses. The court also did not find the memories of defendant's sister to be reliable, since she was only five or six years old during the period she described. Under the circumstances, the court held the offenses were not the product of a diagnosed mental health disorder, nor psychological, physical, or childhood trauma. "What caused the crimes here was that, while intoxicated, [defendant] decided to get behind the wheel and drive" so he could get something to eat. As such, section 1170, subdivision (b)(6) did "not apply" to defendant.

The trial court further stated that it would be contrary to the interests of justice to impose the lower term because the aggravating circumstances outweighed the mitigating circumstances. Defendant's prior convictions as an adult were numerous or of increasing

8

seriousness, he had served a prior prison term, he was on parole or probation at the time of the current offenses, and his prior performance on probation or parole was unsatisfactory. (Cal. Rules of Court, rules 4.421(b)(2)-(5).)[3]

Turning to defendant's *Romero* motion, defense counsel confirmed he had received and reviewed the probation report. Defense counsel did not object to the report's factual representations, which he found to be "robust and complete." Addressing the merits of defendant's *Romero* motion, the court stressed defendant had extensive criminal history, which spanned from a juvenile offense in 2000 through the current offenses in 2013. The court noted defendant had committed the strike offenses (i.e., the robbery and attempted robbery) a little more than five years before the current offenses. The court reiterated the robbery "involved being armed with a firearm, and a clerk on duty was punched and knocked unconscious." The victim of the attempted robbery was a woman trying to put her preschool-age son in her car, and one of the assailants "struck her several times in the face and head, knocking her to the ground." The court further noted that defendant committed the current offenses while on parole for the strikes. The strike offenses "were not the result of a single period of abhorrent behavior; rather . . . they were sandwiched between a pattern of ongoing criminality." His criminal history also involved violent behavior and demonstrated "lack[ ] [of] concern for the well-being and safety of others." Although defendant had shown remorse, he had demonstrated "recklessness" and "an inability to control his behavior," indicating he continued to pose a danger to the community. He also had not done well on parole or probation. The court acknowledged defendant's rehabilitation efforts, including mental health counseling and a substance abuse program in 2022. However, he needed to do more to address his

---

[3] Undesignated rule references are to the California Rules of Court.

substance abuse. In sum, defendant remained in the spirit of the Three Strikes law, and the court declined to strike his strikes.

The trial court then sentenced defendant to prison for an aggregate determinate term of 16 years plus an indeterminate term of 28 years to life, as follows: 12 years for the first count of gross vehicular manslaughter while intoxicated (the middle term of six years doubled due to the strike), four years consecutive for the second count of gross vehicular manslaughter while intoxicated (one third the middle term of six years doubled due to the strike), 25 years to life for the driving under the influence of alcohol and/or drugs causing injury (§ 667, subd. (e)(2)(A)), plus three years for the great bodily injury enhancement, and 180 days concurrent in county jail for each of the two misdemeanor counts. The trial court noted it was imposing consecutive sentences because "each count involved separate victims with separate injuries." The court exercised its discretion and did not impose punishment for the prior serious felony enhancement.

The court awarded 3,927 days of custody credit (1,352 actual days in local custody, 202 days of presentence conduct credit, and 2,373 actual days in prison). The court also imposed a $300 restitution fine (§ 1202.4, subd. (b)), a corresponding $300 parole revocation fine (suspended unless parole is revoked) (§ 1202.45), a $9,658.11 victim restitution fine (§ 1202.4, subd. (f)), a $200 court operations fee (§ 1465.8, subd. (a)(1)), and a $150 criminal conviction assessment fee (Gov. Code, § 70373).

While the court was pronouncing sentence, defense counsel addressed fines and fees and asked the court to impose the minimum restitution fine (i.e. $300) or strike it, so defendant could direct any repayments to the $9,658.11 victim restitution fine. Defense counsel did not argue defendant was indigent or otherwise ask for an ability to pay hearing.

Defendant timely appealed.

## II.  DISCUSSION

*A.*      Romero *Motion*

Appointed counsel filed an opening brief setting forth the facts of the case and asking this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende, supra*, 25 Cal.3d 436.)  Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing the opening brief.

Defendant filed two supplemental briefs challenging the trial court's denial of his *Romero* motion.  He argues the trial court: (1) violated his Fifth and Sixth Amendment rights by making factual determinations about his prior strikes that had not been proven beyond a reasonable doubt to a trier of fact; (2) misinterpreted and failed to properly consider the nature of his strikes, namely that they were a single period of aberrant behavior and he was only the lookout or the driver, meaning he had a minimal and non-violent role in the crimes; (3) failed to appropriately consider that the current crimes were not violent, and that he never intended to kill or cause great bodily injury to either of the two victims in his vehicle; and (4) erroneously disregarded his "future prospects in determining [his] current/future dangerousness or threat to society."  We find defendant's arguments meritless.

As courts have explained, a trial court must decide whether to strike a prior strike by considering factors that are intrinsic to the Three Strikes law's sentencing scheme. (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  These factors include: (1) the nature and circumstances of the current conviction; (2) the nature and circumstances of the prior strike conviction; and (3) the defendant's "background, character, and prospects."  (*Ibid*.) If the defendant falls outside the spirit of the Three Strikes law, the court may, in furtherance of justice, treat the defendant "as though he [or she] had not previously been convicted of one or more serious and/or violent felonies."  (*Ibid*.; see also *Romero, supra*, 13 Cal.4th at pp. 529-530; § 1385, subd. (a).)

11

We review a trial court's denial of a *Romero* motion for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373 (*Carmony*).) In the absence of an affirmative record to the contrary, we presume the trial court properly exercised its discretion and considered all relevant factors. (*Id.* at p. 378; *People v. Myers* (1999) 69 Cal.App.4th 305, 310.) A defendant bears the burden of providing sufficient evidence to support his *Romero* motion. (*People v. Lee* (2008) 161 Cal.App.4th 124, 129 (*Lee*).)

Regarding defendant's first argument that the trial court violated his federal constitutional rights by determining his prior strikes were committed on separate occasions, defendant points to no authority requiring a trial court to rely only on facts proven beyond a reasonable doubt when considering a defendant's *Romero* motion. Given that the jury found defendant's two prior strikes to be true beyond a reasonable doubt, and that defendant bore the burden of providing evidence to support his request to strike at least one of his strikes (*Lee, supra*, 161 Cal.App.4th at p. 129), we find no error.

For similar reasons, we find no merit in defendant's argument that the trial court misinterpreted the underlying facts of his strikes. The record reflects that the trial court relied on the probation report's description of those crimes. Despite defendant's contentions, defense counsel confirmed he had received and reviewed the probation report, and he had no objections to its factual representations. Defendant bore the evidentiary burden in his *Romero* motion (*Lee, supra*, 161 Cal.App.4th at p. 129), and he cannot claim now on appeal that the trial court erred when he offered no evidence during the sentencing hearing that contradicted or clarified the probation report's descriptions of the robbery and attempted robbery and his role in the crimes. (See *In re Rodgers* (1980) 28 Cal.3d 429, 437, fn. 6 [an appellate court is " 'limited to a consideration of matters contained in the record of the trial proceedings,' " and " ' "[matters] not presented by the record cannot be considered on the suggestion of [parties] in the briefs" ' "].)

We further reject defendant's arguments that: (1) the trial court should have struck one or more of his strikes because they were a single event, his role in the strikes was

minimal and non-violent, or he never intended to harm his passengers during his current crimes; and (2) the trial court erroneously failed to adequately consider his future prospects or whether he posed a future danger to society. Although the trial court could have weighed the various considerations differently than it did, we find no abuse of discretion here. The court heard robust arguments from both parties, including evidence and argument from defense counsel regarding defendant's participation in self-help programs in prison. In contrast, the prosecution argued defendant continued to pose a risk to society based on his extensive criminal history and poor prior performance on parole and probation. We further note that section 667.5, subdivision (c)(9) defines "[a]ny robbery" as a violent felony. The trial court's ruling was not "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra*, 33 Cal.4th at p. 377.)

B.      *Imposition of Middle Term*

Defendant next argues the trial court abused its discretion by failing to consider whether defendant posed a future danger to society when declining to impose the lower term. We disagree.

We review a trial court's sentencing decisions for abuse of discretion. (See *Carmony, supra*, 33 Cal.4th at pp. 376-377.) "A court abuses its sentencing discretion when it acts arbitrarily and capriciously, relies on improper matter in reaching its decision, or is unaware of the scope of its discretion so that it does not exercise informed discretion at all." (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765.)

Rule 4.421 sets forth circumstances in aggravation that a court may consider in sentencing, including whether a defendant has numerous prior convictions as an adult, has served a prior prison term, was on parole or probation when the crime was committed, and whether the defendant's prior performance on probation or parole was unsatisfactory. (Rule 4.421(b)(2)-(5).)

13

Section 1170 generally provides for midterm sentences. (§ 1170, subd. (b)(1).) Section 1170 also contains a presumption in favor of the lower term if certain mitigating circumstances were a contributing factor in the commission of an offense, including if the defendant suffered psychological or childhood trauma such as abuse. (§ 1170, subd. (b)(6)(A); see also rule 4.423(b)(2)-(4) [circumstances in mitigation include when a defendant was suffering from a mental condition that significantly reduced culpability for a crime, defendant experienced physical childhood trauma that was a factor in the commission of the current crime, or the current offense is connected to a defendant's mental illness or childhood trauma].) If the presumptive lower term factor contributed to an offense, the trial court may impose the middle term only if it finds that the aggravating circumstances as laid out in rule 4.421 outweigh the mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice. (§ 1170, subd. (b)(6).) A court may still impose the lower term even if none of the mitigating factors set forth in section 1170, subdivision (b)(6) are present. (§ 1170, subd. (b)(7).)

Defendant cites to no authority requiring the trial court to consider a defendant's future prospects or future dangerousness when considering whether to impose the lower term. Instead, the trial court here properly considered whether the upper or middle term was appropriate under section 1170 and rules 4.421 and 4.423. The court first explained section 1170, subdivision (b)(6) did not apply to defendant because the current crimes were not the product of a diagnosed mental health disorder or psychological, physical, or childhood trauma. And, given defendant's extensive criminal history and poor prior performance on parole and probation, the middle term was appropriate because the aggravating circumstances outweighed the mitigating circumstances. Under the circumstances, we find no abuse of discretion.

C.      *Restitution Fine*

Defendant further argues the trial court erred in imposing the restitution fine without first determining his ability to pay. Defendant, however, never asked for an

14

ability to pay hearing.  Although defendant mentioned fines and fees during the resentencing hearing, it was only in the context of requesting the trial court either strike or impose the minimum $300 restitution fine, so that any payment would be directed to the victim restitution fine.  Given that defendant never requested an ability to pay hearing, defendant has forfeited the issue on appeal.  (§ 1202.4, subd. (d) [not requiring a separate hearing before imposing a restitution fine]; see also *People v. Greeley* (2021) 70 Cal.App.5th 609, 624 ["a defendant who fails to object to the imposition of fines, fees, and assessments at sentencing forfeits the right to challenge those fines, fees, and assessments on appeal"].)

D.      *Consecutive Sentences*

Finally, defendant argues the trial court was unaware of its sentencing discretion and should have sentenced defendant concurrently as opposed to consecutively.  (See *People v. Henderson* (2022) 14 Cal.5th 34, 41 [where a defendant has one or more prior strikes, a trial court has discretion to impose concurrent sentences for current felonies that were committed on the same occasion or arose from the same set of operative facts, even if those felonies were serious or violent].)  Given that the trial court explained it was imposing consecutive sentences because "each count involved separate victims with separate injuries," we conclude the trial court properly understood its discretion.  (See *People v. Ramirez* (2021) 10 Cal.5th 983, 1042 ["Absent evidence to the contrary, we presume that the trial court knew the law and followed it"].)

Having examined the entire record, we find no other arguable error that would result in a disposition more favorable to defendant.

## III. DISPOSITION

The judgment is affirmed.

/S/

RENNER, J.

We concur:

/S/

HULL, Acting P. J.

/S/

KRAUSE, J.